UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| REBECCA J. GEISSINGER, | ) | Case No. 5:17-cv-01519 |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| CANTON POLICE and FIREMEN'S CREDIT UNION, INC., et al. | ) | KATHLEEN B. BURKE |
| Defendants. | ) | MEMORANDUM OPINION AND ORDER |

## I. Introduction

Plaintiff Rebecca J. Geissinger ("Geissinger" or "Plaintiff"), a former employee of Defendant Canton Police and Fireman's Credit Union ("CPFCU") has sued CPFCU and Community One Credit Union of Ohio, Inc. ("C1CU"), the entity that purchased CPFCU's assets. Geissinger alleges that Defendants are liable to her for failure to pay her overtime compensation under the Fair Labor Standards Act ("FLSA") and the Ohio Minimum Fair Wage Standards Act and also for breach of contract and unjust enrichment (Counts I-IV).[1] Doc. 1, pp. 3-8.

---

[1] The Complaint labels each claim as a cause of action. In their summary judgment briefing, the parties refer to the claims as counts, which is how the Court will refer to them. In her Complaint, Geissinger also alleges a violation of the Ohio Prompt Pay Act. Doc. 1, pp. 8-9. Defendant C1CU represents in its motion for summary judgment that this claim (Count V) was resolved and dismissed. Plaintiff does not dispute this representation. A formal dismissal of Count V does not appear on the docket. Accordingly, the Court directs the parties to file a joint stipulation of dismissal regarding this claim on the docket within five days.

1

Defendant C1CU has filed a Motion for Summary Judgment (the "Motion"). Doc. 36. The issues raised by the Motion and argued by the parties pertain to whether federal and/or state law pertaining to successor liability make C1CU potentially answerable for the claims made by Geissinger that arise from her employment with CPFCU. Geissinger has filed an Opposition (Doc. 37) and C1CU has filed a Reply (Doc. 38).

For the reasons explained herein, the Court finds genuine disputes of material fact exist as to the issue of successor liability under both federal and state law. Therefore, the Court **DENIES** Defendant C1CU's Motion for Summary Judgment (Doc. 36).

## II. Factual Summary

Geissinger started working for CPFCU on March 8, 2010. Doc. 1, p. 2, ¶ 9; Doc. 39-1, p. 7:5-9.[2] On March 9, 2019, Geissigner signed an untitled document bearing the business name Canton Police & Fireman's Credit Union, Inc. at the bottom, which identified her position at CPFCU as general manager/CEO and set forth details of her salary and benefits ("employment document").[3] Doc. 1, p. 2, ¶ 10, Doc. 1-1, p. 1. The employment document was signed by a manager on March 9, 2010, and also by the board president on March 18, 2010. Doc. 1-1, p. 1. The employment document stated, "anything over 40 hours weekly paid at 1 ½ times." Doc. 1, p. 2, ¶ 11; Doc. 1-1, p. 1. The employment document also indicated that vacation and sick day benefits could accumulate and be paid in full at departure. Doc. 1-1, p. 1. On January 13, 2017, Geissinger was terminated. Doc. 1, p. 3, ¶ 14. During her tenure with CPFCU, Geissinger

---

[2] Doc. 39-1 is the transcript of Geissinger's deposition which was taken on February 18, 2018. The transcript page numbers do not match the ECF Doc. page numbers. The citations to Geissinger's deposition in this opinion are made to the ECF Doc. page numbers, with line number references, as necessary.

[3] Plaintiff considered the document to be an employment agreement or contract. Doc. 1, p. 2, ¶ 10; Doc. 39-1, pp. 39:16-25-40:4-8. C1CU disputes Plaintiff's characterization of the document but does not believe that the dispute creates a genuine issue of material fact. Doc. 36, p. 2, n. 1. For purposes of rendering a decision on the pending Motion, the Court need not reach the issue of whether the March 9, 2010, document was an employment agreement.

accumulated paid time off and she worked overtime. Doc. 1, p. 3, ¶ 15; Doc. 39-2, p. 90: 20-25. Geissinger contends that she was not paid for accumulated paid time off, overtime and other benefits. Doc. 1, p. 3, ¶ 16.

On March 15, 2017, two months after Geissinger's termination, CPFCU and C1CU entered into a Merger and Acquisition Agreement for the sale of CPFCU's assets to C1CU. Doc. 38-1, pp. 4-11. On June 30, 2017, the closing date, C1CU took over CPFCU's assets and CPFCU merged out of existence. Doc. 1, p. 3, ¶ 17; Doc. 38-1, p. 2, ¶ 13; Doc 38-1, p. 10.[4]

Following C1CU's purchase of CPFCU's assets, Nancy Roudebush ("Roudebush"), a former employee and board member of CPFCU,[5] served as a director of C1CU. Doc. 39-2, pp. 121:19-25, 122:1-12, 16-17. While employed with CPFCU, Geissinger had had at least one conversation with Roudeboush regarding Geissinger's overtime. Doc. 39-2, pp. 61-62. Roudebush explained her recollection of one exchange as follows:

> A. I remember her saying that "This credit union owes me so much money," and I remember saying "How do you figure?"
>
> And she said, "They owe me for overtime."
>
> And I am like, "You took that in comp time. How do you figure?"
>
> Q. Is that what you said to her?
>
> A. Yes. And she never elaborated on it.
>
> Q. Were there any other discussions in regards to her overtime?
>
> A. Not that I can remember. I just remember her saying that.

---

[4] Doc. 38-1 includes the affidavit of Evelyn Canterbury, prior Chief Executive Office at C1CU (Doc. 38-1, pp. 1-3), Merger and Acquisition Agreement (Doc. 38-1, pp. 4-9), and Addendum to Merger Agreement (Doc. 38-1, pp. 10-11).

[5] As an employee of CPFCU, Roudebush held various job titles, including General Manager, CEO, and loan officer and, as a member of CPFCU's board, she held different positions, including secretary, treasurer, and president. Doc. 38-1, p. 9; Doc. 39-2, pp. 40:18-21, 45:21-25, 46:1-6, 80:17-25, 81:1-2.

Q. And how did you take that?

A. I didn't know what to think of that. I didn't understand her gist of it; I just didn't get it.

Q. Did you stop and check it out?

A. At that time, I didn't.

Q. Did you stop and ask anybody on the board about that?

A. No. There was so much more going on at that credit union at that time I just, I didn't.

Q. Now, I take it you did not seek advice of counsel at that time?

A. Not at that time.

Doc. 39-1, pp. 62:7-25, 63:1-7.[6]

### III.     Procedural Background

On July 19, 2017, Geissinger filed a Complaint against Defendants CPFCU and C1CU. Doc. 1. Defendants filed separate Answers on September 14, 2017. Doc. 6, Doc. 7. On July 9, 2018, Defendant C1CU filed a Motion for Summary Judgment. Doc. 36. Plaintiff filed an Opposition (Doc. 37) and Defendant C1CU filed a Reply (Doc. 38).

### IV.     Plaintiff's Claims

In her Complaint, Geissinger seeks recovery under federal and state law. Doc. 1. In Count I, Geissinger contends that Defendants are liable to her under the FLSA for failing to pay her overtime as required by the FLSA. Doc. 1, pp. 3-5, ¶¶ 19-34. Geissinger contends that Defendants' failure to pay her overtime was willful. *Id.* In Count II, Geissinger contends Defendants are liable to her under the Ohio Minimum Fair Wage Standards Act for failing to pay

---

[6] During her deposition, Geissinger confirmed she had conversations with Roudebush regarding her overtime, including one in late 2016. Doc. 39-1, pp. 20:9-19, 57:22-25, 58:1.

4

her overtime as required by that act. Doc. 1, pp. 5-6, ¶¶ 35-45. In Count III, Geissinger contends that Defendants are liable to her for breach of contract because Defendants failed to pay her for hours worked in excess of 40 hours per week as set forth in her agreement with CPFCU. Doc. 1, pp. 6-7, ¶¶ 46-56. In Count IV, Geissinger contends that Defendants are liable to her under an unjust enrichment theory because she was not compensated for all hours worked. Doc. 1, pp. 7-8, ¶¶ 57-67.

## V. Defendant C1CU's Motion for Summary Judgment

### A. Defendant C1CU's position

C1CU contends that it is not liable under any theory of recovery asserted by Geissinger because: C1CU was never Geissinger's employer; C1CU cannot be liable as a successor entity for acts of its predecessor because it had no notice of her claim; and C1CU did not violate the FLSA. C1CU also argues that, even if the Court were to find that C1CU is a successor to CPFCU, C1CU cannot be deemed to have willfully violated the FLSA because it had no notice of any claim by Geissinger and therefore the statute of limitations would be two, not three, years; C1CU never had a contract with Geissinger and therefore cannot be liable for breach of contract; and C1CU cannot be liable under an unjust enrichment theory because Geissinger never worked for C1CU and therefore C1CU could not have benefited from her work. Doc. 36; Doc. 38.

### B. Plaintiff's position

Initially, Geissinger contends in her Opposition that summary judgment should be denied because the evidentiary materials attached to C1CU's memorandum in support of its motion for summary judgment should be stricken. Doc. 37, pp. 4-7. She argues that the affidavit of Paula A. Heitger, the current CEO of C1CU, should be stricken because Heitger does not have personal knowledge of events occurring prior to CPFCU's merger with C1CU and she was not properly

5

disclosed as a witness. Doc. 37, pp. 4-5. Geissinger also argues that summary judgment in C1CU's favor is not appropriate because the merger and acquisition agreement attached as Exhibit A to Heitger's affidavit has not been properly authenticated since Heitger was not the CEO at the time of the merger and she lacked personal knowledge of its contents or the negotiations regarding the merger. Doc. 37, pp. 5-6. She requests that the exhibit also be stricken. Doc. 37, pp. 6-7. In response to Geissinger's claims of alleged evidentiary deficiencies, C1CU, in its reply, submitted an additional affidavit from Evelyn Canterbury, the prior CEO at C1CU (Exhibit 38-1, pp. 1-3), which includes an attestation that Exhibit A (agreement by CPFCU with C1CU to sell and transfer its assets) is a true and accurate copy of the Merger and Acquisition Agreement, (Doc. 38-1, pp. 4-11), which was made at or near the time of the transfer of assets and kept in the regular course of regularly conducted activity of the credit union's business (Doc. 38-1, p. 1, ¶ 7). In light of C1CU's submission of this additional evidence,[7] the Court denies Geissinger's request to strike or not consider the evidentiary materials submitted by C1CU in connection with its request for summary judgment.

Geissinger argues that C1CU cannot escape successor liability on the FLSA claim based on its assertion that it had no notice of Geissinger's claim because there is evidence sufficient to infer notice through Geissinger's late 2016 communications with Roudebush regarding her overtime. Additionally, Geissinger argues that "notice" is not the sole or dispositive factor when assessing whether successor liability should be imposed. With respect to the state law overtime claims, Geissinger argues that summary judgment is not proper because the asset purchase transaction between C1CU and CPFCU amounted to a de facto merger. Therefore, she contends that C1CU is liable with respect to her Ohio state law overtime claims as a successor.

---

[7] Geissinger has not challenged or sought to strike the Affidavit of Evelyn Canterbury.

Geissinger also contends that there is evidence to show that the violations of FLSA were willful such that a three-year statute of limitation would apply. Although Geissinger did not have a contract with C1CU, Geissinger argues that C1CU is liable under the contracts of CPFCU, its predecessor, based on principles of successor liability. Finally, Geissinger argues that C1CU is liable under a theory of unjust enrichment because C1CU benefited from Geissinger not being paid for overtime because the failure to pay her resulted in an increase in the value of CPFCU's assets that C1CU purchased.

## VI. Law and Analysis

### A. Motion for summary judgment

Rule 56 of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. The movant "bears the initial responsibility of informing the district court of the basis for its motion, identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, which it believes demonstrates the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotations omitted).

After the moving party has carried its initial burden of showing that there are no genuine issues of material fact in dispute, the burden shifts to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87 (1986). "Inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." *Id.* at 587 (internal quotations and citations omitted). However, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts."

7

*Matsushita*, 475 U.S. at 586. The non-moving party must present specific facts that demonstrate there is a genuine issue of material fact for trial. *Matsushita,* 475 U.S. at 587. "The 'mere possibility' of a factual dispute is not enough." *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 582 (6th Cir. 1986).

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). "A genuine issue for trial exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Muncie Power Products, Inc. v. United Technologies Automotive, Inc.*, 328 F.3d 870, 873 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 248). Thus, for plaintiff to avoid summary judgment against her, "there must be evidence on which a jury could reasonably find for the plaintiff." *Anderson*, 477 at 252. Accordingly, in determining whether summary judgment is warranted, a judge generally asks "whether there is evidence upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed." *Id.* (emphasis in original) (internal citations omitted).

**B.    Successor liability**

As indicated herein, Geissinger has raised overtime wage claims under both state and federal law and contends that C1CU can be held liable as a successor to CPFCU, the entity that employed her. As explained below, the analysis used to assess successor liability under federal law is similar, but not identical, to the analysis employed under state law.

  **1. Successor liability for FLSA claim**

The Sixth Circuit has not specifically decided whether successor liability applies to FLSA cases, but courts within the circuit have found that the doctrine of successor liability may be

applied in FLSA cases. *Comer v. Directv, LLC*, 2016 WL 853027, * 4 (S.D. Ohio Mar. 4, 2016); *Clark v. Shop24 Global, LLC*, 77 F.Supp.3d 660, 691-692 (S.D. Ohio 2015); *Thompson v. Bruister and Associates, Inc.*, 2013 WL 1099796, ** 4-6 (M.D. Tenn. Mar. 15, 2013). "In the Sixth Circuit, 'the appropriateness of successor liability depends on whether the imposition of such liability would be equitable.'" *Clark*, 77 F.Supp.3d at 692 (quoting *Cobb v. Contract Transp., Inc.*, 452 F.3d 543, 554 (6th Cir. 2006)). "To determine the applicability of successor liability in the employment context, courts balance '1) the interests of the defendant-employer, 2) the interests of the plaintiff-employee, and 3) the goals of federal policy, in light of the particular facts of the case and the particular legal obligation at issue.'" *Id.* To balance the foregoing competing interests, courts look at nine relevant factors. *Id.* Those factors are:

(1) Whether the successor company has notice of the charge;
(2) The ability of the predecessor to provide relief;
(3) Whether the new employer uses the same plant;
(4) Whether there has been substantial continuity of business operations;
(5) Whether the new employer uses the same or substantially the same workforce;
(6) Whether the new employer uses the same or substantially same supervisory personnel;
(7) Whether [, under the successor] the same jobs exist under substantially the same working conditions;
(8) Whether the [successor] uses the same machinery, equipment and methods of production [as the predecessor]; and
(9) Whether the [successor] produces the same products [as the predecessor].

*Id.* (citing *Cobb*, 452 F.3d at 554). "[A]ll nine factors will not be applicable to each case [and] [w]hether a particular factor is relevant depends on the legal obligation at issue in the case." *Cobb*, 452 F.3d at 544. "The ultimate inquiry always remains whether the imposition of the particular legal obligation at issue would be equitable and in keeping with federal policy." *Id.*

Acknowledging that some of the nine factors may apply, C1CU contends that the first factor – notice of charge – outweighs any of the other factors when balancing the competing interests. C1CU claims it is undisputed that it lacked notice of Geissinger's overtime claim.

9

C1CU asserts that neither the potential claim nor the associated liability was reflected on the books or financial statements of CPFCU. Further, C1CU points to representations made by CPFCU in the Merger and Acquisition Agreement as evidence that C1CU was not aware of the potential for Geissinger's claim. In particular, C1CU points to Article IV, Section 4.07, wherein CPFCU represented that CPFCU was "not a party to any written or oral . . . [c]ontract for the employment of any officer or individual employee" and that it had "performed all of its obligations required to be performed by it under contracts and agreement to which it is a party." Doc. 36, p. 7.

Based on the record before it, the Court finds that there are genuine issues of material fact that preclude the Court from granting summary judgment in favor of C1CU with respect to the FLSA claims. The evidence shows that, during the time that Geissinger and Roudebush worked together at CPFCU in late 2016, Geissinger raised with Roudebush the issue of being owed money for overtime. Doc. 39-2, pp. 61-62. Geissinger indicated to Roudebush that she felt that the credit union owed her a lot of money for overtime. Doc. 39-2, p. 62:7-9. While Roudebush testified that she did not understand the inquiry at the time because she understood that Geissinger had received comp time for her overtime, this evidence shows that Roudebush was made aware of a potential overtime issue shortly before Geissinger's termination and within close proximity to the execution of the Merger and Acquisition Agreement. Further, Roudebush was involved in both the old and the new companies. She had been an employee of and served on the board of CPFCU as a director; she signed the Merger and Acquisition Agreement on behalf of CPFCU as President, and she continued to serve as a director with C1CU following the merger. Doc. 38-1, pp, 9, 11; Doc. 39-2, pp. 121-122. Thus, although the Merger and Acquisition Agreement did not list Geissinger's employment contract or potential employment

related claims, there is evidence from which it could be inferred that C1CU was aware of Geissinger's potential employment related claims at the time it acquired the assets of CPFCU. *See e.g.*, *Clark*, 77 F.Supp.3d at 693, n. 14 (noting a distinction between having notice of a lawsuit and having notice of potential claims for overtime). C1CU contends that the brief conversation between Geissinger and Roudebush does not constitute sufficient notice to hold C1CU liable. However, considering the foregoing, the Court finds there is a genuine issue of fact as to whether C1CU had notice of Geissinger's overtime claims.

Even assuming arguendo that C1CU could demonstrate no genuine issues of material fact as to the issue of notice, C1CU has not demonstrated that lack of notice alone would be sufficient to entitle it to summary judgment. There are numerous other factors to consider and C1CU has not shown an absence of genuine issues of material fact regarding the other factors, e.g., the ability of the predecessor to provide relief, whether there has been substantial continuity of business operations; whether C1CU is using the same or substantially the same workforce as CPFCU; whether C1CU is using the same or substantially the same supervisory personnel as CPFCU. The Court finds that whether CPFCU can provide relief is a particularly relevant factor since Geissinger was employed only by CPFCU. However, neither party has provided evidence as to this factor. Geissinger does not provide evidentiary support for its position that "currently it is not clear if CPFCU can provide any relief," (Doc. 37, p. 10), and C1CU focuses its arguments on the notice factor. Also, as reflected in the record, all except one of the four remaining CPFCU employees accepted new positions with C1CU. Doc. 38-1, p. 3, ¶ 16. C1CU also owns the building that was formally occupied by CPFCU. Doc. 36-1, p. 2, ¶ 13.

Based on the foregoing, the Court finds that there are genuine issues of material fact regarding successor liability with respect to Geissinger's FLSA claim. Thus, C1CU's motion for summary judgment with respect to Geissinger's FLSA claim is **DENIED**.

C1CU argued that, in the event that the Court denied it summary judgment on the FLSA claims, the Court should find that the applicable statute of limitations is two, rather than three, years because C1CU was not Geissinger's employer and C1CU had no notice of any charge by Geissinger when it acquired CPFCU's assets. Since C1CU rests its statute of limitations argument in part on its claim that it had no notice of the claim and the Court has determined that there are issues of fact as to that point, the Court finds that summary judgment on the issue regarding the applicable statute of limitations would not be appropriate.

2. **Successor liability for Ohio claims**

As observed by the United States District Court for the Southern District of Ohio, resolving the issue of successor liability for FLSA claims does not end the inquiry where a plaintiff, like Geissinger, also asserts claims for unpaid overtime under the Ohio Minimum Fair Wage Standards Act because the federal standard does not apply to claims under the Ohio Act. *Clark*, 77 F.Supp.3d at 693. Instead, when assessing successor liability under Ohio law, courts apply the analysis set forth by the Ohio Supreme Court in *Welco Indus., Inc. v. Applied Cos.,* 67 Ohio St.3d 344 (1993). The court in *Welco* observed that, "[t]he well-recognized general rule of successor liability provides that the purchaser of a corporation's assets is not liable for the debts and obligations of the seller corporation." 67 Ohio St.3d at 346. The court proceeded to identify the "[e]qually well recognized . . . four exceptions to this general rule." *Id.* at 347. Those exceptions provide that a successor entity may be held liable when "'(1) the buyer expressly or impliedly agrees to assume such liability; (2) the transaction amounts to a *de facto* consolidation

12

or merger; (3) the buyer corporation is merely a continuation of the seller corporation; or (4) the transaction is entered into fraudulently for the purpose of escaping liability.'" *Id.* (quoting *Flaugher v. Cone Automatic Machine Co.*, 30 Ohio St.3d 60, 62 (1987)).

In its opening brief, C1CU argues that, since it was never Geissinger's employer and did not sign a contract with Geissinger, it cannot be held liable on the state law claims. C1CU cites *Welco* for the general rule that a purchaser of another company's assets is not liable for the debts and obligations of the seller corporation (Doc. 36, p. 5) but does address the "equally well recognized" exceptions set forth in *Welco*. In her opposition brief, Geissinger argues that summary judgment is not warranted because this case falls within one of those exceptions since the transaction between CPFCU and C1CU amounted to a de facto merger.

As explained in *Welco*, "[a] de facto merger is a transaction that results in the dissolution of the predecessor corporation and is in the nature of a total absorption of the previous business into the successor." 67 Ohio St.3d at 349. "The hallmarks of a de facto merger include (1) the continuation of the previous business activity and corporate personnel, (2) a continuity of shareholders resulting from a sale of assets in exchange for stock, (3) the immediate or rapid dissolution of the predecessor corporation, and (4) the assumption by the purchasing corporation of all liabilities and obligations ordinarily necessary to continue the predecessor's business operations." *Id.* The court observed that "[o]ne court has indicated that a transfer of assets for stock is the sine qua non of a de facto merger." *Id*. (citing *Travis v. Harris Corp.*, 565 F.2d 443, 447 (7th Cir. 1977)).

In support of her argument that summary judgment should not be granted because there is evidence of a de facto merger, Geissinger states:

> [T]he shareholders of CPFCU received equivalent shares in C1CU pursuant to the asset purchase agreement. (Exhibit A to Heitger Aff.). CPFCU essentially merged

13

out of existence and ceased to exist once C1CU took over. Arguably, C1CU assumed all the liabilities and obligations necessary to continue CPFCU's business, especially since CPFCU, almost immediately after purchase of assets of CPFCU, ceased to exist. In addition, one Board member continued to serve on C1CU's Board of Directors. Therefore, the transaction between CPFCU and C1CU was not limited to just purchase of assets, but in essence was a merger between the two corporations. C1CU would thereby be liable for contracts entered into by CPFCU, including the employment agreement between Plaintiff and CPFCU and the subsequent changes to the agreement effected through Board resolutions. (Saler Dep. 24).

Importantly, Section 2. 01 of the Merger and Acquisition Agreement clearly states: "Subject to the terms and conditions of this Agreement, the Continuing Credit Union shall assume all debts, liabilities, and obligations of Merging Credit Union reflected on Merging Credit Union's books and financial statements supplied pursuant to this Agreement on the Closing Date in accordance with generally accepted accounting principles." C1CU clearly obtained Geissinger's payroll records and timesheets that evidenced unpaid overtime because they were produced during discovery.

In addition, as Plaintiff was granted overtime by the Board – the Board that continued on with one CPFCU Board member who had knowledge of Geissinger's unpaid overtime compensation (See Saler Dep. 24), C1CU would be responsible for the unpaid overtime. Hence, C1CU is not entitled to judgment in its favor as to the Plaintiff's state law overtime claim.

Doc. 37, pp. 8-9.

C1CU responds by arguing:

In this case, C1CU is not owned by the same corporate personnel as the people who ran CPFCU. The CEO and president of the credit union changed when C1CU took over CPFCU's assets, as did the CFO. The Board of Directors almost completely changed, with the exception of Ms. Roudebush who joined the new Board. (See Canterbury Affidavit at ¶ 15). Thus, the two credit unions did not include the same corporate personnel.

Doc. 38, p. 7.

C1CU's argument addresses only one portion of one of the four "hallmarks" of a de facto merger under the *Welco* case, i.e., continuation of corporate personnel. Moreover, CICU's argument does not demonstrate that there are no issues of fact regarding even that hallmark. As CICU acknowledges, Roudebush continued on as a director with the successor entity. Also, all

four remaining CPFCU employees were offered an opportunity to work for C1CU post-acquisition and three of the four employees accepted that offer. Doc. 38-1, p. 3, ¶ 16. Additionally, C1CU does not address the "continuation of the previous business activity" portion of the first "hallmark." Nor does C1CU argue that there is no genuine issue of material fact as to the other "hallmarks" of a de facto merger. Gessinger contends that there is evidence sufficient to demonstrate the existence of a de facto merger. For example, Geissinger cites to the fact that CPFCU members received equivalent shares in C1CU per the asset purchase agreement, which would pertain to the second "hallmark," i.e., "continuity of shareholders."

In light of the foregoing, the Court finds that C1CU has failed to demonstrate that there are no genuine issues of material fact as to whether the transaction between CPFCU and C1CU amounted to a de facto merger. Thus, C1CU's motion for summary judgment with respect to Geissinger's state law claims is **DENIED**.

## VII. Conclusion

For the foregoing reasons, the Court finds that genuine disputes of material fact exist that preclude the entry of summary judgment in favor of Defendant C1CU on the question of its potential successor liability as to Plaintiff's claims arising from her employment with CPFCU. Accordingly, the Court **DENIES** Defendant Community One Credit Union of Ohio, Inc.'s Motion for Summary Judgment (Doc. 36).

Date: November 21, 2018

_____
KATHLEEN B. BURKE
U.S. MAGISTRATE JUDGE